UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

POWER PARTNERS MASTEC, LLC,

                      Petitioner,

    v.                                           **Civil No.:**

PREMIER POWER RENEWABLE
ENERGY, INC.,

                      Respondent.
───────────────────────────────────────────


# MEMORANDUM OF LAW IN SUPPORT OF
# PETITION TO CONFIRM ARBITRATION AWARD


                             **Goldberg Segalla, LLP**
                             600 Lexington Avenue, Suite 900
                             New York, New York 10022
                             (716) 566-5412

                             **Attorneys for Petitioner,**
                             **Power Partners MasTec, LLC**

This Memorandum of Law is submitted in support of Power Partners MasTec, LLC's ("MasTec") petition to confirm the October 2, 2014 arbitration award (the "Award"), issued in Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc., case number 13-158-Y-03154-11, pursuant to § 9 of the Federal Arbitration Act (9 U.S.C. § 9). MasTec's petition seeks an entry of judgment against Premier Power Renewable Energy, Inc. ("Premier"), in the amount of $1,964,419.56, together with attorneys' fees, expenses, and costs of $324,448.84, and interest of $707,191.04, plus per diem interest of $645.25 from October 14, 2014 until the date the judgment is paid in full.

## STANDARD OF REVIEW

"The court's function in confirming or vacating an arbitration award is severely limited." Reliastar Life Ins. Co. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (quotations omitted). Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant [confirmation] unless the award is vacated, modified, or correct." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Under Section 9 of the Federal Arbitration Act ("FAA"), "the court must grant [] an order [confirming the arbitration award] unless the award is vacated, modified, or corrected[.]" 9 U.S.C. § 9.

"[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Alexander Julian, Inc. v. Mimco, Inc., 29 Fed. App'x 700, 702 (2d Cir. 2002). There is "a strong federal policy favoring arbitration, the enforcement of arbitration agreements, and the confirmation of arbitration awards." Pike v. Freeman, 266 F.3d 78, 89 (2d

1

Cir. 2001). Where the arbitrator has even a "barely colorable justification for the outcome reached," the award should be confirmed. D.H. Blair & Co, 462 F.3d at 111

An arbitration award will be confirmed unless the opposing party satisfies the significant burden for vacating it. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997). "A motion to vacate . . . is not an occasion for de novo review of an arbitral award." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). Rather, "[a] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Id. Section 10(a) of the FAA "sets forth certain grounds upon with a federal court may vacate an arbitral award, but all of [these] involve corruption, fraud, or some other impropriety on the part of the arbitrators." Id.; see also Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 121 (2d Cir. 2011) (Section 10(a) grounds include: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrator, specified misconduct on the arbitrators' part, or 'where the arbitrators exceeded their powers.'"). In addition, the Second Circuit has permitted vacatur in severely limited circumstances where the award exhibits "manifest disregard of the law." Id.

*Judicial Review Under Section 10(a)(4) of the Federal Arbitration Act*

Section 10(a)(4) provides that an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to this provision." Reliastar, 564 F.3d at 85 (quotations omitted). The question is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement to reach a certain issue, *not whether the arbitrators*

*correctly decided that issue.*" Sterling Jewelers, 646 F.3d at 122. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his [or her] authority," the award cannot be vacated under Section 10(a)(4). *Reliastar*, 564 F.3d at 86; *see also Sterling Jewelers*, 646 F.3d at 127 ("Regardless, whether the arbitrator was right or wrong in her analysis, she had the authority to make the decision, and the parties to the arbitration are bound by it.").

*Judicial Review for Manifest Disregard of the Law*

"[A]wards are vacated on grounds of manifest disregard only in 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrator [] is apparent." T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010). A court may not vacate an award "because of a simple error in law or a failure by the arbitrators to understand or apply it, but only when a party clearly demonstrates that the panel intentionally defied the law." STmicroelectronics, N.V. v. Credit Suisse Sec. LLC, 648 F.3d 68, 78 (2d Cir. 2011) (quotations omitted); see also Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 217 (2d Cir. 2002) (petitioner must establish that "the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it."). The manifest disregard standard thus requires a finding that (1) the law is "well defined, explicit, and clearly applicable to the case," and (2) "the arbitrators knew of [the] governing legal principle yet refused to apply it or ignored it altogether." Wallace, 378 F.3d at 189. Here, the arbitrator considered the applicable law and correctly applied it such that there is no basis to deny confirmation.

**STATEMENT OF FACTS**

MasTec brings this action to confirm a $2,996,059.44 Final Arbitration Award against Premier for its failure to pay MasTec for work performed pursuant to a Procurement and Construction Subcontract ("Subcontract") entered into between the parties. Verified Petition, Exhibit B.

Specifically, MasTec served as a subcontractor on a solar development project in which Premier was the general contractor and RF Douglas County Development Corp. ("RF Douglas") was the owner. Pursuant to the Subcontract, MasTec constructed 31 solar generating facilities for Premier. Verified Petition, Exhibit A. When Premier failed to pay MasTec nearly $2 million for work performed, MasTec commenced the arbitration proceeding. Verified Petition, Exhibit C.

Arbitration was the required forum for resolving any disputes between MasTec and Premier. Pursuant to the Subcontract, any disputes that the parties could not resolve were to be submitted to arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Verified Petition, Exhibit A at § 20.2.

In addition, any dispute under the Subcontract was to be governed by New York Law and the parties consented to the personal jurisdiction and venue of the State and Federal Courts located within the Southern District of New York for enforcement of an arbitration award. Id. at

§ 22.5.  The Subcontract provided for 12% interest from the date of damages incurred until the date any Award was paid in full.  Id. at § 20.2(e).[1]

On December 20, 2011, MasTec filed a demand for arbitration against Premier and the Platte River Insurance Company ("Surety"), seeking contractual damages for labor, materials, and services provided for the solar project.  Verified Petition, Exhibit C.  Premier and the Surety served Answers on January 13, 2012.  Verified Petition, Exhibits D and E.

Premier filed a separate demand for arbitration against RF Douglas on January 5, 2012.  Verified Petition, Exhibit F.  On June 18, 2012, the two proceedings were joined.  However, the joint arbitration was stayed when RF Douglas filed for bankruptcy on October 11, 2012.

On May 28, 2013, MasTec filed a motion in the Bankruptcy Court to lift the stay so that arbitration could proceed only against Premier.  The Bankruptcy Court granted MasTec's motion on August 5, 2013.  Verified Petition ¶¶ 19, 20.

MasTec's arbitration demand was amended on October 30, 2012 to eliminate the claim against the Surety and sought damages for Premier's breach of the Subcontract.  Verified Petition, Exhibit G.  As a result, the arbitration proceeded against Premier, with MasTec pursuing a claim for $1,964,419.56, plus attorney's fees, 12% annual interest and arbitration costs.

As noted in the accompanying Declaration of Christopher J. Belter, the arbitration proceedings were repeatedly delayed as a result of Premier changing attorneys.  During the

---

[1] The Subcontract specifically provided: "Any award of the arbitrator shall include interest from the date of any damages incurred for breach or other violation of this Contract, and from the date of the award until paid in full, at the rate of the lesser of one percent (1%) per month and the maximum rate allowed by Applicable Laws."  The Arbitrator determined that "[t]he interest rate of 1% per month or 12% annually is applicable here since it is less than the 25% usury rate in New York."  Verified Petition, Exhibit B at p. 10; see also BH99 Realty, LLC v. Li, 2011 U.S. Dist. LEXIS 51621, at *14-*15 (E.D.N.Y. Mar. 16, 2011) ("[Plaintiff] has also established that the default annual rate of 12.125 percent that it seeks is less than the maximum interest rate available under New York Law.").

5

course of the arbitration proceeding, Premier was represented by four different counsel and each time a new counsel appeared, Premier demanded an adjournment of the arbitration hearing. This resulted in the arbitration hearing being repeatedly delayed. The arbitration ultimately proceeded to a hearing on July 14, 2014.

In advance of the hearing, MasTec submitted an Arbitration Brief, Statement of Undisputed Facts, and two witness certifications. Verified Petition, Exhibit H. On June 30, 2014, MasTec served its prehearing submissions upon Premier and its registered agent, Corpgate, Inc. A copy of the Affidavit of Service is attached as Exhibit I to the Verified Petition. Premier made no pre-hearing submissions. Verified Petition ¶ 23.

On July 14, 2014, the Arbitrator held the hearing in New York, New York. Having fully briefed its position, MasTec submitted and marked hundreds of exhibits, provided a Statement of Undisputed Facts, offered sworn affidavits, and introduced testimony from three witnesses. Premier chose to not attend the hearing. Verified Petition ¶ 25.

Despite Premier's failure to participate in the hearing, the Arbitrator did not close the evidentiary record and offered Premier the opportunity to submit any evidence that would rebut MasTec's presentation. Specifically, the Arbitrator allowed Premier until August 15, 2014 to submit: (1) objections to MasTec's testimony and exhibits; (2) challenges to MasTec's Statement of Undisputed Facts; (3) opposing witness Affidavits; and (4) a reply to Power Partners' pre-hearing brief. A copy of the Arbitrator's July 15, 2014 Interim Order # 1 to this effect is attached as Exhibit J to the Verified Petition. Pursuant to Interim Order # 1, on July 16, 2014 MasTec provided copies of the hearing transcript and additional exhibits marked at the hearing to Premier and Premier's counsel. Verified Petition, Exhibit K.

Premier did not challenge any testimony or exhibits introduced by Mastec, nor did it introduce any opposing exhibits or challenge MasTec's Statement of Undisputed Facts. Instead, Premier opted to solely submit a Post-Hearing Brief. Verified Petition ¶ 28, Exhibit L.

In Premier's Post-Hearing Brief, it asserted four defenses to MasTec's claims, specifically: (1) that certain MasTec change orders had not been approved by Premier and were therefore not compensable, (2) that a "pay when paid" clause excused Premier from having to pay MasTec until Premier received full payment from the owner, (3) that the owner's failure to fully pay Premier constituted a "Force Majeure Event" excusing Premier from its payment obligations to MasTec, and (4) that the arbitration should not have proceeded without the owner as a party.

MasTec filed a Supplemental Brief in response to Premier's Post-Hearing Brief. Verified Petition, Exhibit M. MasTec also submitted an application for attorney's fees expenses, and costs, which Premier did not oppose. Verified Petition, ¶ 30.

On October 2, 2014, the Arbitrator issued the Final Award finding "that Premier Power has breached the Subcontract by its failure to pay MasTec in accordance with their executed Subcontract and its EPC contract with RF Douglas." Verified Petition Exhibit B, p. 4. The Final Award granted MasTec the full relief demanded and rejected each basis asserted by Premier in opposing MasTec's demand. The Arbitrator awarded MasTec: (i) $1,964,419.56 in damages; (ii) $707,191.04 in interest as of October 14, 2014; and (iii) $324,448.84 in attorney's fees expenses and costs. Id. at pp. 9-11.

Notably, the Arbitrator considered, and rejected, each defense asserted by Premier. First, with respect to Premier's claim that certain change orders had not been approved, the Arbitrator framed the issue as follows:

7

> Premier Power argues that the aforementioned Changed Orders were either not submitted in compliance with Section 11.2 of the Subcontract (notice requirements) or were not appropriately authorized or approved by Respondent, and therefore, those Change Orders should not be award to Claimant. Claimant disagrees and argues that these Change orders in fact were approved and Premier Power simply has refused to pay MasTec for the work MasTec performed.

Verified Petition, Exhibit B at p. 5. The Arbitrator rejected Premier's argument, finding "the real issue here not to be lack of notice; rather, it is lack of payment by Premier Power for work it approved." Id.

Second, with respect to Premier's position that a "pay when paid" clause excused it from having to pay MasTec until Premier was paid by the owner, the Arbitrator also rejected this argument. The Arbitrator noted that precedent in both New York and Colorado interprets a pay when paid clause as providing for a "reasonable" time for a general contractor to pay a subcontractor and that "three years is an unreasonable period of time to withhold payment from MasTec for its completed work." Id. at p. 7.

Third, the Arbitrator rejected Premier's argument that the owner's failure to fully pay Premier constituted a "Force Majeure Event" excusing Premier from its payment obligations to MasTec. The Arbitrator concluded that "Respondent's eleventh-hour argument that there is some sort of Force Majeure event here, absent any previous notice of such and in the face of RF Douglas' written notice to Premier Power of its default for its failure to pay MasTec, is simply without merit." Id. at p. 8.

Finally, the Arbitrator rejected Premier's argument that the arbitration should not have proceeded without the owner as a party. Specifically, the Arbitrator concluded "the dispute is Premier Power's failure to pay MasTec under the terms of their Subcontractor, the Owner LLC has no rights or obligations under the Premier Power-MasTec Subcontract. Accordingly, the Arbitrator finds that Owner LLC is not a necessary party to this arbitration." Id. at p. 9.

**ARGUMENT**

**I.      THE HEARING WAS FUNDAMENTALLY FAIR.**

A proceeding is fundamentally fair if each party has an adequate opportunity to present its evidence and argument. Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). This does not mean each party must be present at an arbitration hearing.  See, e.g. Mandell v. Reeve, 2011 WL 4585248, at *5 (S.D.N.Y 2011), aff'd 510 Fed. App'x 73 (2d Cir. 2013); Seneca Ins. Co. v. Dowers, 1999 WL 144497, at *5-6 (S.D.N.Y. 1999).  The "hearing" is fundamentally fair so long as a party has some opportunity to present evidence, even if it is not at a live hearing.  Seneca Ins. Co., at *5-6.  This is especially true where the party chose to be absent, either by design or poor planning.  Id. at *6.  A party's choice to not put on a defense to protest an arbitrator's denial of an adjournment does not make a hearing fundamentally unfair. Alexander Julian, 29 Fed. App'x at 703.

Premier cannot claim prejudice from its own failure to introduce evidence at the hearing or thereafter  because "such prejudice stems from its own refusal to provide such evidence." Northwestern Nat'l Ins. Co. v. Generali Mexico Compania de Seguros, S.A., 2000 U.S. Dist. LEXIS 5586, at *37 (S.D.N.Y. May 1, 2000).  "[A]rbitration is not a trial run in which an arbitral respondent may sit silently by, take note of the evidence presented without attempting to clarify matters presented to the arbitrators, and then, if the result turns out unfavorably, seek judicial relief."  Id.

Premier had the opportunity to challenge MasTec's brief, affidavits, testimony, and evidence presented at the July 14, 2014 hearing through its own post-hearing submissions. Premier in fact filed an eight-page reply brief challenging several narrow issues, all of which was considered and rejected by the arbitrator.

9

Premier's failure to attend the hearing did not preclude it from presenting its evidence and arguments to the arbitrator. Tempo Shain Corp., 120 F.3d at 20. Further, Premier's failure to make a substantial challenge to MasTec's presentation, either in protest of the Arbitrator's denial of their adjournment or due to its own lack of legitimate defenses for not paying MasTec, does not affect the fairness of the hearing. Alexander Julian, 29 Fed. App'x at 703. Therefore, the hearing was fundamentally fair, and the Award should be confirmed. Id.

## II. PREMIER'S FOURTH COUNSEL'S ELEVENTH HOUR REQUEST TO ADJOURN THE HEARING WAS PROPERLY DENIED.

As noted in the Declaration of Christopher Belter, Premier had four different counsel over the course of the arbitration proceeding. Each time new counsel appeared, a request to adjourn the hearing date was made, which led to the hearing date being repeatedly postponed and ultimately set for July 14, 2014. When Premier's fourth counsel appeared for the first time at 2:50 p.m. on July 11, 2014—the Friday before the hearing date—yet another request was made to adjourn. The Arbitrator denied this request, however, noting that Premier was aware of the hearing date and that there was no basis for another delay. The Arbitrator's denial of Premier's fourth counsel's request for yet another adjournment was proper.

Arbitrators have broad discretion when considering procedural adjournment requests. Alexander Julian, Inc. v. Mimco, Inc., 29 Fed. App'x 700, 703 (2d Cir. 2002). Denial of an adjournment will only result in vacatur of an arbitration award if there was no reasonable basis for the arbitrator's decision, or the denial created a "fundamentally unfair" proceeding. Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001). If the arbitrator had at least "a barely colorable justification" for his decision to deny an adjournment request, the award should be confirmed. Tempo Shain Corp., 120 F.3d at 18.

10

The Arbitrator properly denied Premier's eleventh hour request to adjourn the July 14th, 2014 evidentiary hearing. As stated in the Petition and Declaration of Christopher J. Belter, Premier continuously delayed the arbitration by changing its legal representation then requesting adjournments of the scheduled hearing dates. The Arbitrator repeatedly moved back the hearing date at the request of Premier's first three attorneys. As the Arbitration proceeded, Premier was notified of and repeatedly acknowledged the July 14, 2014 hearing date over a period of several months.

Attempting to delay the hearing once again, Premier's CEO feigned ignorance of the hearing date days before it was set to occur, declined to discuss their alleged lack of notice on a conference call with MasTec and the Arbitrator, and retained a fourth counsel to make yet another eleventh-hour request for an adjournment. Given Premier's prior notice of the hearing and history of changing counsel as a tactic to delay the arbitration, the Arbitrator properly denied that request. Accordingly, the denial of Premier's adjournment request was proper, so the Award should be confirmed

## CONCLUSION

For the foregoing reasons, MasTec respectfully requests that this Court issue an Order:

  a. Confirming the Final Award issued by the Arbitral Tribunal;

  b. Entering judgment in conformity with the terms of the Final Award for $2,996,059.44, which includes (i) $1,964,419.56 in damages; (ii) $707,191.04 in interest as of October 14, 2014; and (iii) $324,448.84 in attorney's fees expenses and costs.

  c. Granting Petitioner all applicable interest accrued to date at the contractual rate of 12%, which amounts to per diem interest of $645.25 from October 14, 2014 until the date of judgment; and

  d. Granting such other relief as the Court deems proper.

Dated: October 21, 2014

                GOLDBERG SEGALLA LLP

                */s/ Christopher J. Belter*

                Christopher J. Belter
                Daniel B Moar
                *Attorneys for Petitioner*
                *Power Partners MasTec, LLC*
                600 Lexington Avenue, Suite 900
                New York, New York 10022
                (716) 566-5412
                (716) 566-5401 (facsimile)
                cbelter@goldbergsegalla.com